**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **Kate Spade LLC** and Coach Services, Inc.<br><br>       Plaintiff,<br><br>   v.<br><br>**Vinci Brands LLC**, **Incipio Technologies, Inc.**, and **Does 1-10**, inclusive,<br><br>       Defendants. | Civil Action No.: |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**BRYAN CAVE LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel:  212-541-2000
Fax: 212-541-4630

*Attorneys for Plaintiffs Coach Services, Inc.,*
*Kate Spade LLC, and Tapestry, Inc.*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT ................................................................................................................................ 3

I.      LEGAL STANDARD FOR PRELIMINARY RELIEF ..................................................... 3

II.     THE EVIDENCE PLAINLY ESTABLISHES THAT KATE SPADE IS LIKELY
        TO SUCCEED ON THE MERITS ...................................................................................... 4

        A.      Kate Spade's Trademark Claims (1st-3rd and 6th Counts) ....................................... 5

                1.      Kate Spade Has a Legal, Exclusive Right to the Licensed Marks ............... 5

                2.      Vinci's Unauthorized Use of the Licensed Marks is Causing a
                        Likelihood of Confusion (and Actual Confusion) ....................................... 6

                3.      Vinci's Arguments That Termination was Not Effective Are Baseless ...... 8

                4.      Vinci's Unauthorized Use of the Licensed Marks and
                        Misrepresentations Regarding Its Status as Licensee ................................. 11

        B.      Kate Spade's Other Claims (4th-5th and 7th-8th Counts) ........................................ 15

III.    VINCI'S ONGOING MISCONDUCT WILL CAUSE KATE SPADE
        IRREPARABLE HARM .................................................................................................... 15

IV.     THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST STRONGLY
        FAVOR GRANTING KATE SPADE A PRELIMINARY INJUNCTION AND TRO .. 17

CONCLUSION ........................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 4KIDS ENTERTAINMENT, INC., et al.*,
  463 B.R. 610 (Bankr. S.D.N.Y. 2011)........................................................................................8

*725 Eatery Corp. v. City of New York*
  408 F.Supp.3d 424 (S.D.N.Y. 2019).........................................................................................5

*Andino v. Fischer*,
  555 F. Supp. 2d 418 (S.D.N.Y. 2008)........................................................................................4

*Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co., Inc.*,
  576 F. Supp. 1055 (E.D.N.Y. 1983) ..........................................................................................7

*Can't Stop Prods., Inc. v. Sixuvus, Ltd.*,
  295 F. Supp. 3d 381 (S.D.N.Y. 2019)........................................................................................6

*Capri Sun GmbH v. Am. Beverage Corp.*,
  414 F. Supp. 3d 414 (S.D.N.Y. 2019)........................................................................................6

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
  696 F.3d 206 (2d Cir. 2012) ......................................................................................................6

*Church of Scientology International v. Elmira Mission of Church of Scientology*,
  794 F.2d 38 (2d Cir. 1986) ..................................................................................................7, 18

*Fla. State Univ. v. Individuals Identified on Schedule A*,
  No. 21 CIV. 10631 (VM), 2022 WL 9481947 (S.D.N.Y. Oct. 14, 2022) ...............................16

*Franchised Stores of New York v. Winter*,
  394 F.2d 664 (2d Cir. 1968) ......................................................................................................7

*Kelly Toys Holdings, LLC v. alialialiLL Store*,
  606 F.Supp.3d 32 (S.D.N.Y. 2022) .........................................................................................15

*L & L Wings, Inc. v. Marco-Destin, Inc.*,
  676 F.Supp.2d 179 (S.D.N.Y. 2009).........................................................................................6

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
  799 F.2d 867 (2d Cir. 1986) ......................................................................................................5

*Marks Org. Inc. v. Joles*
  784 F. Supp.2d 322 (S.D.N.Y. 2011) ......................................................................................16

*Murjani Int'l Ltd. v. Sun Apparel, Inc.*,
  87 CIV 4628 (PKL), 1987 WL 15110 (S.D.N.Y. Jul 31, 1987)................................................7

*MyPlayCity, Inc. v. Conduit Ltd.*,
10 CIV. 1615 (CM), 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) *adhered to
on reconsideration,* 2012 WL 2929392 (S.D.N.Y. July 18, 2012)............................................6

*NES Baseball & Softball Facility, Inc. v. Ne. Angels Softball, LLC*,
No. 22-CV-9158 (NSR), 2022 WL 17370117 (S.D.N.Y. Dec. 2, 2022)..................................16

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010).....................................................................................16

*New York ex rel. Schneiderman v. Actavis PLC*,
787 F.3d 638 (2d Cir. 2015).....................................................................................................4

*North Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018).......................................................................................................3

*Otokoyama Co. v. Wine of Japan Imp., Inc.*,
175 F.3d 266 (2d Cir. 1999).....................................................................................................5

*Prudential Ins. Co. of Am. v. Ikomoni*,
96 CIV. 7272 (RO), 1996 WL 640915 (S.D.N.Y. Nov. 6, 1996).............................................7

*Ryan v. Volpone Stamp. Co.*,
107 F.Supp.2d 369 (S.D.N.Y.2000)........................................................................................6, 7

*Soter Technologies, LLC v. IP Video Corp.*,
523 F.Supp.3d 389 (S.D.N.Y. 2021)........................................................................................5

*Team Rubicon Global, Ltd. v. Team Rubicon, Inc.*,
No. 20-CV-2537-LTS-KNF, 2020 WL 2539117 (S.D.N.Y. May 19, 2020),
*aff'd*, 828 Fed. App'x 74 (2ddp Cir. 2020)..............................................................................18

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
800 F. Supp. 2d 515 (S.D.N.Y. 2011)*, aff'd*, 511 Fed. App'x 81 (2d Cir. 2013)....................16

*Valenti v. Going Grain*,
159 A.D.3d 645 (1st Dep't 2018) ...........................................................................................11

**Other Authorities**

15 U.S.C. §1116(a) ................................................................................................................15

Lanham Act..........................................................................................................................4, 15

Lanham Act Section 32..........................................................................................................5

Lanham Act Section 43(a) ......................................................................................................4

Trademark Modernization Act...............................................................................................15

Fed. R. Civ. P. 65(a)................................................................................................................3

Fed. R. Civ. P. 65(b) ..............................................................................................................4

Plaintiff Kate Spade LLC and Coach Services, Inc. (collectively "KSNY"),[1] by and through the undersigned counsel, respectfully submits this memorandum in support of its motion ("Motion") for a preliminary injunction and temporary restraining order.[2]

## PRELIMINARY STATEMENT

Vinci Brands LLC ("Vinci") was a non-exclusive licensee of Kate Spade. On June 14, 2023, Kate Spade terminated the license for Vinci's non-payment. Kate Spade placed Vinci on notice, extended payment deadlines and agreed to payment plans, many of which Vinci missed. Currently, Vinci owes Kate Spade more than $4 million.

Despite knowing the license has been terminated, and having been asked to return all Kate Spade intellectual property, including artwork, packaging designs and molds, incredibly Vinci continues to seek to use Kate Spade intellectual property, including to manufacture or sell Kate Spade-branded products, and is intentionally creating confusion with manufacturers, customers and distributors and seeking to disrupt Kate Spade's relationship with its new licensee, Case-Mate, Inc. Vinci's conduct, which includes targeted outreach to manufactures, customers and distributors, false assertions that Vinci is the sole licensee for Kate Spade-branded product and social media posts representing that Vinci continues to have a relationship with Kate Spade, must stop as Kate Spade is being and will continue to be irreparably harmed.

As noted above, Vinci had a non-exclusive license with Kate Spade that contractually obligated it to pay Kate Spade certain sums in connection with the manufacture and sales of tech accessories and mobile device accessories. From November 2022 through March 2023, Kate Spade worked with Vinci on various payment plans. Despite the fact that Kate Spade agreed to

---

[1]     Capitalized terms shall have the meaning ascribed to them in the Verified Complaint, unless otherwise defined herein.

[2]     Kate Spade LLC, along with affiliates Coach Services, Inc. and Tapestry, Inc., is a defendant in the related action, pending in this Court, brought by Vinci Brands LLC, Civil Action No. 1:23-cv-5138 ("Vinci Action").

extended payment options, Vinci continued to default on its obligations. On June 14, 2023, Kate Spade terminated its agreement with Vinci. The termination followed several months of missed payments by Vinci, the reporting of increasingly troublesome information about Vinci's financial condition, and Vinci's failure to communicate with Kate Spade on any aspect of its ongoing payment default.

As the owner of the license, Kate Spade properly terminated all of Vinci's rights. In addition to the fact that Vinci was to cease acting as a non-exclusive licensee, it was also required to comply with certain post-termination obligations – which Vinci continues to ignore.

This application has become necessary because Vinci is acting in complete and blatant disregard of the termination of its license and its loss of authorization to manufacture, distribute or sell products with Kate Spade branding. Furthermore, Vinci is engaging in unauthorized, wrongful and harmful conduct that is extremely damaging to Kate Spade's reputation, relationships and goodwill. Vinci continues to use the KATE SPADE® Marks. Vinci also continues to misrepresent that it is a licensee of Kate Spade and further, that it is the only licensee authorized to, and capable of, placing and fulfilling orders for technology cases and mobile device accessories. These statements are false. Vinci's conduct is causing immediate, immeasurable, and irreparable harm.

Vinci's conduct is all the more egregious in light of its own application for injunctive relief. Vinci has failed to apprise the Court of material and undisputed facts that conclusively establish Vinci does not have a colorable claim against KSNY. Its failure to mention its existing and continuing financial defaults and the fact that the force majeure clause, even if applicable generally to its performance, will not excuse a failure to make timely payments when due are serious omissions and misrepresentations. Further, Vinci's claim that Kate Spade has made

public "announcements" about the termination is also untrue. Vinci announced the termination itself on June 16, 2023, when it filed its Complaint in federal court, noting Kate Spade had informed it that its license had been terminated. (Vinci Action, ECF No. 1, Complaint.) This is significant, given that on June 14, 2023, Vinci had indicated that it was unwilling to discuss a joint announcement.

None of KSNY's communications constitute public announcements and indeed, Vinci's false statements have required private and targeted communications to those Vinci has contacted. Tellingly, Kate Spade's suggestion to Vinci that they work together on a joint public statement was apparently rejected by Vinci as it never pursued the suggestion or put forward a proposed statement. Vinci's failure to apprise the Court of these facts is seriously troubling.

The totality of these circumstances necessitates immediate injunctive relief. As set forth below, the cases make clear that injunctions should issue when protected marks are being infringed. The cases also make clear that Vinci's egregious misconduct in misrepresenting its status must also be enjoined to preclude any further harm to Kate Spade.

**STATEMENT OF FACTS**

For the general factual background and a detailed description of the proceedings described below, Kate Spade respectfully refers the Court to the Verified Complaint and Declaration of Charlotte Warshaw ("Warshaw Declaration"), accompanying this memorandum.

**ARGUMENT**

## I.     LEGAL STANDARD FOR PRELIMINARY RELIEF

A preliminary injunction enjoins a non-movant from engaging in particular activity pending the disposition of a legal action. *See* Fed. R. Civ. P. 65(a); *North Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018). A temporary

restraining order enjoins a non-movant from engaging in particular activity pending the disposition of the preliminary injunction motion. *See* Fed. R. Civ. P. 65(b).

A party seeking a preliminary injunction, including a temporary restraining order ("TRO"), must establish: (1) "irreparable harm," (2) "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party," and (3) "that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

KSNY have established their entitlement to both a preliminary injunction and a TRO. As explained below, Vinci Brands LLC ("Vinci") is interfering with KSNY and the kate spade new york brand's (collectively, "Kate Spade") intellectual property, jeoardizing its manufacturing schedule and orders, and is creating a grave risk of significant consumer confusion. Vinci's conduct constitutes trademark infringement and unfair competirion under state and federal law. In the absense of a TRO and preliminary injunction enjoining Vinci engaging in this misconduct, KSNY and Kate Spade will suffer irreparable harm. Accordingly, KSNY's motion for a TRO and preliminary injunction should be granted.

## II.   THE EVIDENCE PLAINLY ESTABLISHES THAT KATE SPADE IS LIKELY TO SUCCEED ON THE MERITS

The evidence, set forth in detail in the Verified Complaint and Warshaw Declaration, plainly establish that KSNY is likely to succeed on their claims.

### A.    Kate Spade's Trademark Claims (1st-3rd and 6th Counts)

To obtain a TRO and preliminary injunction, KSNY need to establish a likelihood of success on the merits of only one of their claims. *See 725 Eatery Corp. v. City of New* York, 408 F.Supp.3d 424, 459 (S.D.N.Y. 2019). Nearly the same standard governs KSNY's claims for trademark infringement, unfair competition, and violations of Sections 32 and 43(a) of the Lanham Act (the "Trademark Claims"). *See Soter Technologies, LLC v. IP Video Corp.*, 523 F.Supp.3d 389, 398 (S.D.N.Y. 2021) ("The standards governing claims for unfair competition, under Section 43(a) of the Lanham Act, and for trademark infringement, under Section 32, are substantially the same…. Under New York common law, the standards for trademark infringement and unfair competition are virtually identical to the standard under the Lanham Act, except that New York law requires an additional showing of bad faith." (citation omitted) (collecting cases)).

To establish a likelihood of success on the merits of its Trademark Claims, KSNY must show that is has a "legal, exclusive right to the mark" and "a likelihood that customers will be confused as to the source of the infringing product." *See Otokoyama Co. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 270 (2d Cir. 1999) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986)); *Soter*, 523 F.Supp.3d 389, 397 ("The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.") (citation omitted)*. KSNY must also show "bad faith" for the New York claims. *Id.*

#### 1.    *Kate Spade Has a Legal, Exclusive Right to the Licensed Marks*

Kate Spade, through Kate Spade LLC, has registered the Licensed Marks (as defined in the License Agreement) that are the subject of this action with the US Patent and Trademark Office ("PTO"). (Verified Complaint, ¶¶ 29-31; Exh. 1.) These marks are conceptually strong

and commercially powerful, as found in several decisions by the Trademark Trial and Appeal Board. (Verified Complaint, ¶¶ 33-34.) The PTO registrations are *prima facie* evidence that the marks are registered and valid (*i.e.*, protectable), "that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 433 (S.D.N.Y. 2019) (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 n.10 (2d Cir. 2012)).

Further, by entering into the License Agreement in 2014, and into several amendments incorporating that agreement since then, Vinci has repeatedly affirmed Kate Spade's ownership of the Licensed Marks and associated goodwill. *See Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, 295 F. Supp. 3d 381, 394 (S.D.N.Y. 2019) ("By entering into the agreement, the licensee affirms the licensor's ownership of the mark.").

Accordingly, the evidence is conclusive that Kate Spade owns the Licensed Marks.

### 2. Vinci's Unauthorized Use of the Licensed Marks is Causing a Likelihood of Confusion (and Actual Confusion)

The evidence also is more than adequate to establish likelihood of confusion given Vinci's continued use of the Licensed Marks after the License Agreement was terminated and Vinci's continued misrepresentations that Vinci is a licensee of Kate Spade.

"When an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law." *L & L Wings, Inc. v. Marco-Destin, Inc*., 676 F.Supp.2d 179, 188 (S.D.N.Y. 2009) (citing *Ryan v. Volpone Stamp. Co*., 107 F.Supp.2d 369, 399 (S.D.N.Y.2000)); *see also MyPlayCity, Inc. v. Conduit Ltd*., 10 CIV. 1615 (CM), 2012 WL 1107648, at *21 (S.D.N.Y. Mar. 30, 2012) *adhered to on reconsideration*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012) ("[B]ecause [defendant] continued to distribute [plaintiff's] trademark after its license to do so was terminated, consumers could fairly conclude that [defendant] still

had [plaintiff's] permission to use the mark, and likelihood of confusion is thus established as a matter of law.") (collecting cases). *See also Prudential Ins. Co. of Am. v. Ikomoni*, 96 CIV. 7272 (RO), 1996 WL 640915, at \*1 (S.D.N.Y. Nov. 6, 1996) ("The continued use of the name and marks of Prudential by [defendant] will undoubtedly cause confusion to a public who will assume that [defendant] continues to operate under the sponsorship of Prudential.").[3]

Kate Spade validly terminated the License Agreement. Section 3.3(a) of the License Agreement provides that failure "to pay any funds owing to Licensor pursuant to this Agreement, as and when due" constitutes a default once Kate Spade provides notice, unless Vinci cures the default within 3 business days. (Verified Complaint, Exh. 2, § 3.3.(a).) Section 3.5, in turn, provides, "[i]f the event of default occurs and is continuing, the non-defaulting party may, by written notice to the defaulting party, immediately terminate this Agreement . . . ." (Verified Complaint, Exh. 2, § 3.5.)

As set forth in the Verified Complaint, in September 2022, Vinci began shirking its required License Agreement payments when they were due, and by March 2023, Vinci owed Kate Spade approximately \$3.7 million. (Verified Complaint, ¶¶ 38-42) On March 20, 2023, KSNY transmitted a letter, with a detailed analysis of Vinci's missed payments, and notified Vinci that, despite Kate Spade's numerous accommodations, Vinci owed more than \$3.7 million; KSNY demanded payment by March 23, 2023. (Verified Complaint, ¶ 42; Warshaw Decl., Exh. 4.) On March 31, 2023, Kate Spade provided Vinci with a formal notice of default based on

---

[3]    *See also Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co., Inc.*, 576 F. Supp. 1055, 1060 (E.D.N.Y. 1983) (citing *Franchised Stores of New York v. Winter*, 394 F.2d 664 (2d Cir. 1968)) ("[S]ale by a licensee of unauthorized products, i.e., products outside the scope of the license, is likely to confuse the public into believing that such products are in fact manufactured or authorized by the trademark owner."); *Murjani Int'l Ltd. v. Sun Apparel, Inc*., 87 CIV 4628 (PKL), 1987 WL 15110, at \*10 (S.D.N.Y. Jul 31, 1987) ("Common sense compels the conclusion that a strong risk of *consumer confusion* arises when a terminated licensee continues to use the former licensor's trademarks.") (emphasis added) (citation omitted); *Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369, 399 (S.D.N.Y. 200) (citing *Church of Scientology International v. Elmira Mission of Church of Scientology*, 794 F.2d 38 (2d Cir. 1986)) ("In the case of an ex-licensee, the marks are identical and confusion is almost inevitable.").

Vinci's failures to pay. (Verified Complaint, ¶ 44; Warshaw Decl., Exh. 8.) On June 14, 2023, after receiving no further response from Vinci for 75 days – let alone a payment curing the material default – KSNY sent Vinci a Notice of Termination. (Verified Complaint, ¶ 47; Warshaw Decl., Exh. 15.) On June 15, 2023, KSNY sent Vinci a notice exercising its rights upon the termination of the License Agreement, (among other things) instructing Vinci to cancel all cancellable orders for Licensed Merchandise as required by the License Agreement. (Verified Complaint, ¶ 64; Warshaw Decl., Exh. 16.)

Accordingly, Vinci received proper notice of default and more than ample opportunity to cure, and Kate Spade properly invoked its right to terminate under the License Agreement. In short, Vinci's License Agreement with Kate Spade terminated on June 14, 2023.

### 3. *Vinci's Arguments That Termination was Not Effective Are Baseless*

It is undisputed that (i) Vinci was due to pay approximately $3.7 million to Kate Spade by March 31, 2023, and (ii) Vinci failed to make these payments. However, Vinci contends that Kate Spade's termination was not effective on two alleged grounds, neither of which has any merit.

Vinci contends that the Notice of Termination was not effective because its text referred to "notice pursuant to Section 3.5(a) of the License Agreement." (Warshaw Decl., Exh. 15) (emphasis supplied.) Although there is no sub-paragraph (a), section 3.5 is the termination provision. In any event, section 3.5 does not require the non-defaulting party to specify which provision triggers termination; only "written notice to the defaulting party" is required. (Verified Complaint, Exh. 2, § 3.5.)[4] Further, the prior March 31, 2023 notice of default provided detailed

---

[4]      Vinci's attempted reliance (in its motion in the Vinci Acton) on *In re 4KIDS ENTERTAINMENT, INC., et al.*, 463 B.R. 610 (Bankr. S.D.N.Y. 2011) is wholly unavailing. In that bankruptcy case, the licensor's termination was deemed ineffective for three reasons – none of which was a typographic or ministerial error, as here. *Id.* at 684. And, of course, this is not a bankruptcy case in which any party seeks a forfeiture.

notice of Vinci's multiple defaults, and the subsequent June 15, 2023 letter provided detailed instructions regarding termination. (Warshaw Decl., Exh. 8 & 16.) Given all of the foreging, it is disingenuous and incorrect for Vinci to argue that it did not receive adequate notice of termination.

Vinci also contends that the "Force Majeure" provision, added in the Sixth Amendment to the License Agreement,[5] precluded Kate Spade from terminating the License Agreement because of third-party production delays of Apple's iPhone 14 due to COVID-19. This contention is wrong for several reasons.

*First*, the plain language of the "Force Majeure" provision specifically excludes payment obligations: "The occurrence of a Force Majeure Event … does not affect Licensee's obligation to timely make any required payment …. (Verified Complaint, Exh. 3, § 6 (adding §22.11 to License Agreement).) Here, the default on which Kate Spade's termination is based is Vinci's non-payment, and thus it is not precluded by the "Force Majeure" provision.

---

[5]     The full text of the provision is:

> **21.11 Force Majeure**. Neither Party shall be liable for loss or damage or be deemed to be in default under this Agreement if such Party is prevented or delayed from timely performing any obligation or condition under this Agreement by any act of God or the elements, natural disaster, earthquake; flood; epidemic; pandemic; public health emergency, accident; explosion; casualty; riot; civil disturbance; act of public enemy; embargo; travel restriction; quarantine; business shutdowns; war; any municipal, county, state, national, or international ordinance or law or any executive, administrative, judicial or similar order; strike, lockout, or labor controversy impacting the overall industry, or other cause or circumstance beyond a Party's reasonable control (each a "Force Majeure Event"). Upon occurrence of a Force Majeure Event, the nonperforming Party shall promptly notify the other Party of a Force Majeure Event's effect on performance, and how long it is expected to last. The nonperforming Party shall use reasonable efforts to minimize the effect of any delay in performance and to resume its performance. The occurrence of a Force Majeure Event does not relieve either Party from liability for an obligation arising prior to the occurrence of that Force Majeure Event and does not affect Licensee's obligation to timely make any required payment or provide any required statements or reports. If a Force Majeure Event occurs during the term of this Agreement, the Parties agree to meet and negotiate in good faith concerning any terms of the Agreement that either of the Parties wishes to address in light of such Force Majeure Event.

(Verified Complaint, Exh. 3, § 6 (adding §22.11 to License Agreement).)

*Second*, the "Force Majeure" provision does not apply. A party is not "deemed to be in default … if such Party is prevented or delayed from timely performing any obligation or condition under this Agreement *by*" several enumerated events. (*Id.*) (emphasis supplied.) Although Vinci contends that the mere fact of COVID-19 is a Force Majeure Event, there is no dispute that COVID-19 began causing shutdowns and disruptions in March 2020 – more than three years ago.[6] Vinci was not "prevented or delayed" from making timely payments from late 2022 through March 2023 "by" COVID-19.

*Third*, and relatedly, the party invoking the "Force Majeure" provision must provide prompt notice: "Upon occurrence of a Force Majeure Event, the nonperforming Party shall promptly notify the other Party of a Force Majeure Event's effect on performance, and how long it is expected to last." (Verified Complaint, Exh. 3, § 6 (adding §22.11 to License Agreement).) Vinci began to miss required payments when due in September 2022, yet failed to provide notice of any alleged "Force Majeure" event until March 2023. (Verified Complaint, ¶ 43; Warshaw Decl., ¶¶ 21-22.)

The juxtaposition between (i) Vinci's reliance on a clear, known ministerial error (reference to Section 3.5(a) in the June 14, 2023 Notice of Termination) and (ii) Vinci's failure to candidly disclose the entirety of "Force Majeure" provision in the Sixth Amendment to the License Agreement is substantively striking and highlights Vinci's bad faith tactics. First, given the parties' extended discussions and detail of the Notice of Default, Vinci can credibly claim neither that it did not understand the Notice of Termination nor that the termination was not

---

[6]     For example, this Court issued Orders as early as March 27, 2020, recounting disruptions and delays caused by COVID. *See, e.g.,* https://www.nysd.uscourts.gov/sites/default/files/2020-03/In%20re_CORONAVIRUS_COVID_19_This%20Document%20Relates%20to%20the%20Suspension%20of%20Local%20Rule%206%20of%20The%20Division%20of%20Business%20Among%20Judge%20in%20the%20Southern%20District%20of%20New%20York%2020%20.pdf.

effective. Second, Vinci selectively cites to and cribs language from the "Force Majeure" provision – avoiding the agreed-to language that summarily defeats its "Force Majeure" allegations, namely that "a Force Majeure Event…does not affect Licensee's [Vinci's] obligation to make any required payment…." Vinci surely knows that controlling, payment language is present, not only because Vinci agreed to it but also because it immediately precedes other language upon which Vinci now attempts to rely (*i.e.*, that the parties agree to meet and negotiate in good faith if there is a Force Majeure Event). The Court should not credit Vinci's incredulous and incomplete allegations.

Moreover, Vinci's repeated failures to make required payments under the License Agreement, aggregating approximately \$3.7 million, constituted a material breach, justifying termination of the agreement under New York law. *See, e.g.*, *Valenti v. Going Grain*, 159 A.D.3d 645, 646 (1st Dep't 2018) ("failure to make monthly payments under the promissory note and to place \$60,000 in escrow in anticipation of the accounting constituted a material breach, justifying plaintiff's termination of the contract") (citations omitted).

### 4.   *Vinci's Unauthorized Use of the Licensed Marks and Misrepresentations Regarding Its Status as Licensee*

As a result of the termination of the License Agreement on June 14, 2023, all of Vinci's rights to use the Licensed Marks terminated and reverted to Licensor, and, except for limited circumstances not implicated in this matter,[7] Vinci and all of its associated entities and individuals were required to cease and permanently discontinue any use of the Licensed Marks in

---

[7]      Vinci is required to promptly cancel all cancellable orders for products in process as of the day of termination. Vinci has a limited right to manufacture Infringing Products under Section 12.3 of the License Agreement that cannot be cancelled.  With respect to such manufactured Infringing Products, inventory on hand, and uncompleted and uncancelable orders for Infringing Products in process as of the day of termination of the License Agreement, such products are subject to Licensor's option to purchase the remaining inventory (which KSNY has exercised for available products and will exercise for additional products when the option term opens).  Because KSNY has exercised its option or not yet had the opportunity to exercise its option, and because Defendants' are in default under the License Agreement, Defendants continue to have *no right* to sell any inventory or Infringing Products to customers. (Warshaw Decl., ¶¶ 7, 37, 47, 61; Verified Complaint, ¶ 48 n.2; Exh. 2, §§ 12.1-12.4.)

connection with manufacturing, advertising, promoting, offering to sell, selling, distributing, or dealing in or with licensed merchandise, *i.e.*, phone cases. (Verified Complaint, ¶ 48; Exh. 2, § 12.1(a.)) Because it is no longer a licensee, Vinci's continued use of the Licensed Marks constitutes infringement.

As set forth in the examples in the Verified Complaint and Warshaw Declaration, Vinci is still currently looking to manufacture and advertise Kate Spade-brand products for sale, and, upon information and belief, selling, phone case products bearing or associated with the Licensed Marks ("Infringing Products"). (Verified Complaint, ¶ 72.) For example:

- A review of Vinci's website (https://incipio.com/) indicates it is still currently advertising for sale, and, upon information and belief, selling, Infringing Products including, for instance, the non-exhaustive listing below:

| Product | Product Name | Product URL |
|---------|-------------|-------------|
|  | kate spade new york Defensive Hardshell Case for Samsung Galaxy S23 Ultra | https://incipio.com/products/kate-spade-new-york-defensive-hardshell-case-for-samsung-galaxy-s23-ultra |
|  | kate spade new york Protective Hardshell Case for iPhone 14 Pro | https://incipio.com/products/kate-spade-new-york-protective-hardshell-case-for-iphone-14-pro |
|  | kate spade new york High Gloss Protective Hardshell Case for iPhone 14 Pro | https://incipio.com/products/kate-spade-new-york-high-gloss-protective-hardshell-case-for-iphone-14-pro |

| Product | Product Name | Product URL |
|---------|--------------|-------------|
| | kate spade new york Protective Hardshell Case for Google Pixel 7a | https://incipio.com/products/kate-spade-new-york-protective-hardshell-case-for-google-pixel-7a |

- On June 21, 2023, Vinci posted the following to their social media accounts, including Instagram, reconfirming their advertising and sale of Infringing Products:



- On June 21, 2023, Vinci posted the following to their social media accounts, including Instagram, reconfirming their advertising and sale of Infringing Products:



(Verified Complaint, ¶¶ 73-77.)

Compounding this, Vinci is (upon information and belief) selling, without authorization, the exact same Kate Spade-branded phone cases to the same customers, through identical channels of trade, and in direct competition with Kate Spade's properly licensed or authorized products. (*Id.*, ¶ 77.) As a result, customers who are encountering and purchasing Kate Spade brand phone cases are likely to be and, in fact, are being confused about the source, origin, or sponsorship of Vinci's unlicensed products. (*Id.*, ¶ 78; *see also* Warshaw Decl., ¶¶ 9-10, 50-52.)

Further, as set forth in detail in the Verified Complaint, after terminating the License Agreement with Vinci, Kate Spade entered into a license agreement with Case-Mate, Inc. ("Case-Mate"), and Case-Mate is now Kate Spade's authorized licensee for tech accessories and mobile phone cases. (*Id.*, ¶ 66; Warshaw Decl., ¶ 43.) However, Vinci is sending false and deliberately misleading correspondence to Case-Mate's suppliers, manufacturing partners and factories, distributors, and retail customers of Kate Spade branded phone cases, alleging Vinci is the proper and sole licensee of the KATE SPADE Marks for use with phone cases, to the exclusion of the true licensee, Case-Mate. (Verified Complaint, ¶ 76.) By actively holding itself

out as the sole source of authentic Kate Spade brand phone cases to factories and customers and representing that it has authorization, when it has none, Vinci is significantly exacerbating the likelihood of and actual confusion. (*Id.*, ¶ 78; *see also* Warshaw Decl., ¶¶ 9-10, 50-52.)

All of the foregoing provides more than ample support for Kate Spade's Trademark Claims and other related claims.

### B. Kate Spade's Other Claims (4th-5th and 7th-8th Counts)

Given Vinci's misconduct, as set forth above and in the Verified Complaint, Kate Spade also has a likelihood of success of prevailing on its other claims, including its claims for deceptive trade practices, trademark dilution, breach of contract, and tortious interference with Kate Spade's license agreement with Case-Mart.

### III. VINCI'S ONGOING MISCONDUCT WILL CAUSE KATE SPADE IRREPARABLE HARM

KSNY also has provided more than ample evidence of irreparable harm absent immediate injunctive relief.

Under the Lanham Act, as amended by the Trademark Modernization Act, KSNY is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. §1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."); *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F.Supp.3d 32, 52 and n.5 (S.D.N.Y. 2022) (citing 15 U.S.C. § 1116(a)) (under "the remedial provisions of the Lanham Act, a plaintiff who has established infringement is entitled to a rebuttable presumption of irreparable

harm.").[8] Vinci cannot rebut that presumption as there is plainly continuing, future irreparable harm, particularly in connection with the anticipated launch of a new generation of mobile devices by Apple in September 2023. And, Vinci cannot credibly allege any delay by Kate Spade – let alone any supposed unreasonable delay – as there has been none.

Further, KSNY also has provided more than ample evidence of irreparable harm absent immediate injunctive relief. "It is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010) (collecting cases). "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark … because loss of control over one's reputation is neither calculable nor precisely compensable." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011)*, aff'd*, 511 Fed. App'x 81 (2d Cir. 2013). "A particularly strong likelihood of confusion should weigh in favor of finding irreparable injury." *Marks Org., Inc. v. Joles,* 784 F. Supp.2d 322, 334 (S.D.N.Y. 2011).

As set forth above, as well as in the Verified Complaint, although Vinci is not a licensee and is not otherwise authorized to use the Licensed Marks, Vinci continues to use and advertise these marks without permission – in the same channels and to the same retailers. (Verified Complaint, ¶¶ 72-77; *see also* Warshaw Decl., ¶¶ 9-10.) The strong showing of likelihood of confusion resulting from this misconduct establishes irreparable harm.

Moreover, at the time Kate Spade ended its license with Vinci, there was justifiable

---

[8]     *See also NES Baseball & Softball Facility, Inc. v. Ne. Angels Softball, LLC*, No. 22-CV-9158 (NSR), 2022 WL 17370117, at *5 (S.D.N.Y. Dec. 2, 2022); *Fla. State Univ. v. Individuals Identified on Schedule A*, No. 21 CIV. 10631 (VM), 2022 WL 9481947, at *2 (S.D.N.Y. Oct. 14, 2022).

concern that Vinci may not have the wherewithal to facilitate the sale of Kate Spade branded products. As a result of Vinci's repeated failures to comply with modified payment plans, Kate Spade grew concerned about Vinci's ability to perform the obligations of the License Agreement, including making anticipated payments, manufacturing product, and meeting supply and distribution expectations related to Apple's expected upcoming launch of a new mobile device in September 2023 and associated newly designed Kate Spade-branded phone cases. (Verified Complaint, ¶ 56; Warshaw Decl., ¶ 31.) Over a period several months as Vinci repeatedly failed to adhere to the terms of successive payment plans, Kate Spade's concerns grew substantially, and, as a consequence, Kate Spade began the process of identifying another licensing partner to manufacture, distribute, and sell Kate Spade-branded phone cases in time for the Fall 2023 launch event. (*Id.*) This is of grave concern because, for the tech accessory industry, in the modern era, and particularly for those in the business of designing and selling mobile phone cases and tech accessories, there is no bigger sales event than the launch day of a new generation of a mobile device. (Verified Complaint, ¶ 56.)

## IV. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST STRONGLY FAVOR GRANTING KATE SPADE A PRELIMINARY INJUNCTION AND TRO

The balance of hardships strongly favors granting KSNY immediate injunctive relief. Vinci has been on notice that the License Agreement was terminated since June 14, 2023, yet it continues to use the Licensed Marks without authorization and continues to misrepresent that it is the only authorized licensee of Kate Spade for mobile and tech accessories when, in fact, it is not a licensee at all. Thus, Vinci's ongoing infringement of Kate Spade's Licensed Marks is willful. As explained above, Vinci's misconduct threatens Kate Spade's goodwill and reputation and its ability to successfully manufacture and sell mobile and tech accessories, including for the upcoming expected Apple device launch in September 2023. On the other hand, even assuming

17

Vinci could succeed on the merits (which it cannot), Vinci's dire financial condition raises concern about its wherewithal to sell and deliver Kate Spade branded products. Furthermore, even if Vinci did manufacture any Kate Spade branded products, under the terms of the License Agreement KSNY would have the exclusive right at its sole option to purchase that product at cost. (Warshaw Decl., ¶ 61 and n.6; Exh. 2, § 12.2.) In addition, Vinci assumed the risk of loss of business resulting from a default from non-payment and termination, under the terms of the License Agreement. Any alleged dependency of Vinci's business on the Licensed Marks is also belied by the fact that the License Agreement was expressly *non-exclusive*. (*See* Verified Complaint, Exh. 2, § 2.1(a).)

"The public has an interest in strict enforcement of contract provisions and trademark laws," and "the public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increases the probability of consumer confusion." *Team Rubicon Global, Ltd. v. Team Rubicon, Inc.*, No. 20-CV-2537-LTS-KNF, 2020 WL 2539117, at \*7 (S.D.N.Y. May 19, 2020), *aff'd*, 828 Fed. App'x 74 (2ddp Cir. 2020) (citing *Church of Scientology Intern. v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986)) (internal quotations omitted). Here, Vinci has intentionally disregarded the plain terms of the License Agreement's termination provision, and Vinci's ongoing use of the Licensed Marks and misrepresentations that it is Kate Spade's only authorized licensee substantially increase the probability that Kate Spade will not be able to meet the demands of the upcoming Apple launch, disrupt Kate Spade's relationship with its new license partner, result in lost orders and create consumer confusion. Hence, public policy warrants granting immediate injunctive relief.

## CONCLUSION

For all the reasons stated above, KSNY respectfully requests that the Court grant KSNY's Motion, enter an Order substantially in the form proposed herewith, and grant KSNY such other and further relief as is just and proper.

Dated: New York, New York
     June 26, 2023

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:   */s/  Christine Cesare*
     Christine Cesare    (Bar No. 1990134)
     Thomas J. Schell    (Bar No. 2991149)
     Jane Ernst     (Bar No. 5927009)
     1290 6th Ave,
     New York, NY 10104
     Tel: (212) 541-2000
     cbcesare@bclplaw.com
     tjschell@bclplaw.com
     jane.ernst@bclplaw.com

     Nick E. Williamson (*pro hac vice* forthcoming)
     One Metropolitan Square,
     211 N Broadway Suite 3600,
     St. Louis, MO 63102
     Tel: (314) 259-2000
     nick.williamson@bclplaw.com

     *Attorneys for Plaintiffs*