UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VINCI BRANDS LLC,
                        Plaintiff,

              -against-                  23 Civ. 5138 (LGS)

COACH SERVICES, INC., et al.,
                        Defendants.

------------------------------------------------------------:     **ORDER**

KATE SPADE LLC, et al.,
                        Plaintiffs,

              -against-                  23 Civ. 5409 (LGS)

VINCI BRANDS LLC, et al.,
                        Defendants.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

    WHEREAS, by Opinion and Order docketed on September 13, 2023 (the "Opinion"), the motion for a preliminary injunction filed by Vinci Brands LLC ("Vinci") was denied in large part and granted in part, and the cross-motion for a preliminary injunction filed by Coach Services, Inc. and Kate Spade LLC ("Kate Spade") (together, "KSNY") was granted in large part and denied in part;

    WHEREAS, Vinci timely moved for reconsideration of the portion of the Opinion denying Vinci's preliminary injunction motion and granting KSNY's motion;

    WHEREAS, "[a] party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155,

170 (2d Cir. 2021).[1]  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Id.*  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *accord Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021).  "[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued."  *Banister v. Davis*, 590 U.S. 504, 508 (2020); *see also Suarez v. United States*, No. 17 Civ. 133, 2022 WL 1078436, at *2 (S.D.N.Y Apr. 11, 2022).  The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court."  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009); *accord Suarez*, 2022 WL 1078436, at *2.

WHEREAS, the motion for reconsideration is denied because Vinci does not identify any change of controlling law, the availability of new evidence or the need to correct a clear error or prevent injustice.  The motion for reconsideration is also denied on the merits;

WHEREAS, Vinci argues first that it did not breach Section 11.10 of the license agreement between Kate Spade as licensor and Vinci as licensee (the "License Agreement").  Section 11.10 of the License Agreement provides:

> **11.10.**  With respect to any indebtedness for borrow money by Licensee that is secured by a first priority security interest in any of the Licensee's assets, Licensee shall not cause or suffer to exist any event of default under such indebtedness as a result of which the lender shall have accelerated such indebtedness or exercise any remedies of lender against such Licensee assets.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

> *Licensee shall promptly notify Licensor in writing in the event that a lender (i) delivers written notice of default to Licensee under such indebtedness and (ii) as a result of such default, has accelerated such indebtedness or has exercised such default remedies against any Licensee assets.*

(Emphasis added). Vinci argues that its debt under its loan agreement with Siena Lending Group, LLC ("Siena") (the "Siena Loan Agreement") was not accelerated. This argument was already raised and considered by the Court. The Opinion explains that the May 11, 2023, notice of sale of the underlying collateral from Siena and the May 24, 2023, notice of sale from Case-Mate, Inc. ("Case-Mate") evidence the acceleration of the debt. Both notices make clear that the proposed foreclosure sale of Vinci's assets would be used to satisfy "all obligations and indebtedness owing by" Vinci "to Secured Party." These notices satisfy the requirement that "an election to accelerate must be made by an unequivocal overt act that discloses the noteholder's choice." *Freedom Mortg. Corp. v. Engel*, 169 N.E.3d 912, 919 (N.Y. 2021), *superseded by statute on other grounds*, Foreclosure Abuse Prevention Act, 2022 N.Y. Laws Ch. 821; *see also CIT Bank, N.A. v. Zisman*, No. 20-1314, 2024 WL 763392, at *1 (2d Cir. Feb. 26, 2024) (summary order) ("The acceleration of a mortgage debt may occur in different ways." (New York law)). Contrary to Vinci's argument, while it is true that each notice describes a future sale, the notice was not "merely an expression of future intent that fell short of an actual acceleration." *See Milone v. US Bank Nat'l Ass'n*, 83 N.Y.S.3d 524, 529 (2d Dep't 2018). The notices indicate the existing acceleration by the fact that the proceeds of the sale would be used to satisfy "all" debt owed by Vinci. Moreover, Vinci waived its right to receive any "notice of intent to accelerate" or "notice of acceleration" from Siena under Section 7.3(j) of the Siena Loan Agreement;

WHEREAS, even if the loan was not accelerated, Siena and Case-Mate had exercised "default remedies against any Licensee assets," which independently triggered Vinci's notice

3

obligation under Section 11.10 of the License Agreement. Siena and Case-Mate both transferred funds out of Vinci's bank account following Vinci's default, as Vinci had granted Siena and then Case-Mate a security interest in "all Deposit Accounts, bank accounts, deposits and cash" under Section 3.1(f) of the Siena Loan Agreement. Whether KSNY received notice of the default from Siena (rather than Vinci) does not excuse Vinci's obligation as "Licensee" that Vinci must "promptly notify Licensor in writing" under Section 11.10 of the License Agreement;

WHEREAS, Vinci also argues that it did not breach Section 11.8 of the License Agreement. Section 11.8 of the License Agreement requires Vinci to "pay punctually and discharge when due . . . any indebtedness . . . except: (i) when such indebtedness is subject to a good faith bona fide dispute in the normal course of Licensee's business; or (ii) with respect to indebtedness constituting in aggregate, less than One Million Dollars and 00/100 ($1,000,000)." Vinci's argument that "any indebtedness" refers only to indebtedness to third parties (i.e., not Kate Spade) is a new argument that should have been raised before the issuance of the Opinion. Regardless, it is unavailing under the plain meaning of "any indebtedness." Indebtedness to third parties such as Siena is contemplated by a different provision, Section 11.10 of the License Agreement, which describes "any indebtedness *for borrow money*" (emphasis added);

WHEREAS, Vinci's argument that there were good faith bona fide disputes under Section 11.8 is new and therefore improper on a motion for reconsideration. As "courts will not address new arguments or evidence that the moving party could have raised before the decision issued," *Banister*, 590 U.S. at 508, the Court declines to address this new argument here;

WHEREAS, Vinci's argument that the force majeure condition had not abated by July 18, 2023, when Kate Spade terminated the License Agreement again (the "Second Termination") was previously raised and addressed by the Court. Indeed, this Court invited testimony on this very topic in setting an evidentiary hearing, asking the parties to address whether the alleged

4

force majeure events "caused Vinci's failure to pay with respect to both the June 14, 2023, and July 18, 2023, terminations of the licensing agreement by Kate Spade LLC." At the hearing, Vinci's expert Adam Levin testified that Apple's iPhone production was disrupted from September 2022 through January 2023. Vinci's co-owner, Steve Latkovic, testified that Vinci had "not made further payments to Kate Spade after their notice, until we get resolution, but we are ready and able to pay it, yes." As the Opinion states, "KSNY offered credible evidence that Vinci was able to pay KSNY some amount of owed funds at least by the time of the Second Termination";

WHEREAS, Vinci also improperly raises a new argument that Vinci's ability to pay Kate Spade "was entirely contingent on ACS's willingness to *allow* Vinci to use its loaned funds to pay Kate Spade." This argument is undermined by Mr. Latkovic's testimony that Vinci was "preparing to approach Kate Spade about getting payment" after receiving funds from ACS Group Acquisitions LLC, which suggests Vinci could have paid Kate Spade once it received the funds;

WHEREAS, Vinci's argument that its failure to pay was excused by KSNY's obligation to renegotiate the guaranteed minimum royalties ("GMR") under Schedule 8 of the Sixth Amendment to the License Agreement was previously considered and rejected. The Court credited the evidence in the record that the parties did renegotiate the schedule of payments and that Vinci repeatedly acknowledged the GMR amounts it owed. It is hereby

**ORDERED** that Vinci's motion for reconsideration is **DENIED**.

The Clerk of Court is respectfully directed to close the motions at Dkt. 163 in Case No. 23 Civ. 5138 and Dkt. 110 in Case No. 23 Civ. 5409.

Dated: August 5, 2024
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE