UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KATE SPADE LLC et al.,

               Plaintiffs,                 **23-cv-5409 (LGS) (VF)**

       -against-                       <u>**OPINION**</u>

VINCI BRANDS LLC et al.,

               Defendants.
-----------------------------------------------------------------X
ACS GROUP ACQUISITION LLC,

               Counterclaim Plaintiff,

       -against-

KATE SPADE LLC, et al.,

               Counterclaim Defendants.
-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

      Plaintiffs Kate Spade LLC and Coach Services, Inc. (together, "Kate Spade")

commenced this action on June 26, 2023, against Vinci Brands LLC ("Vinci"), seeking damages,

attorneys' fees, and injunctive relief for trademark infringement, breach of contract, and related

claims arising out of Vinci's alleged failure to fulfill its obligations pursuant to a license

agreement with Kate Spade, and Vinci's subsequent unauthorized use of the Kate Spade

trademark. <u>See</u> ECF No. 147 ¶¶ 1-4. Since commencement of this action, Kate Spade has

amended its complaint twice, adding ACS Group Acquisitions LLC ("ACS," and together with

Vinci, the "Defendants") as a defendant and asserting additional claims for breach of contract

against Vinci. <u>See</u> ECF Nos. 25, 147. Presently before the Court is Kate Spade's motion for

leave to file a Third Amended Complaint. <u>See</u> ECF Nos. 300-02, 318, 321, 333, 336. For the

reasons stated herein, the motion for leave to amend is **GRANTED**.

## BACKGROUND[1]

This dispute arises out of the collapse of Kate Spade and Vinci's licensor-licensee relationship, through which Vinci served as an authorized licensee for Kate Spade-branded tech accessories under a license agreement with Kate Spade. See ECF No. 302-1 (the "Third Amended Complaint" or "TAC") ¶ 1. On November 17, 2023, Kate Spade filed its Second Amended Complaint, which is the current operative complaint. See ECF No. 147.

In the Second Amended Complaint, Kate Spade alleges that Vinci breached its obligations under the license agreement, and that after the license agreement terminated, Vinci improperly continued to use the Kate Spade trademark as if it was still a licensee. Id. ¶¶ 112-23, 130-40, 146-50, 154-79. Kate Spade also asserts claims against Vinci for unfair competition and false advertising under the Lanham Act, and unfair competition and deceptive trade practices under state law. Id. ¶¶ 124-29, 141-45, 151-53. Finally, Kate Spade alleges that Vinci tortiously interfered with Kate Spade's license agreement with Case-Mate, Inc. ("Case-Mate"), the licensee who replaced Vinci. Id. ¶¶ 180-86. With respect to ACS, Kate Spade alleges that ACS threatened to use or actually used the Kate Spade trademark without authorization, thus infringing on Kate Spade's trademark. Id. ¶¶ 187-200. Kate Spade also asserts claims against ACS for unfair competition and false advertising under the Lanham Act. Id. ¶¶ 201-08. Kate Spade additionally seeks declaratory judgment against ACS regarding ACS's improper use of Kate Spade's trademark. Id. ¶¶ 209-221.

---

[1] The Court presumes the parties' familiarity with the relevant factual and procedural background of this case, which is detailed in Opinion and Order of the Honorable Lorna G. Schofield on the parties' cross-motions for a preliminary injunction. See ECF No. 96. The background information recounted herein is limited to that which is relevant to the instant motion.

In May 2024, months into fact discovery and after Kate Spade had filed the Second Amended Complaint, ACS, Vinci's secured creditor, disclosed to Kate Spade a sales agency and services agreement (the "Onward Services Agreement"). See ECF No. 301 at 1. Kate Spade learned that pursuant to that agreement, Vinci transferred its obligations under its license agreement with Kate Spade to Onward Brands LLC ("Onward") in June 2023, without Kate Spade's knowledge or consent and subsequently Vinci ceased its operations. Id. at 1, 5; TAC ¶¶ 4, 65. Onward is owned and operated by Charles Tebele and Sam "Sonny" Haddad, who also own and operate ACS. TAC ¶¶ 18-19. Through subsequent discovery, Kate Spade learned that Onward continued to manufacture, market, and sell Kate Spade-branded goods without Kate Spade's knowledge or consent. ECF No. 301 at 1; TAC ¶¶ 5, 92, 101-102.

Kate Spade now seeks to amend its complaint to add factual allegations to further support its existing breach-of-contract claim against Vinci, based on Vinci having entered into the Onward Services Agreement and subsequently discontinuing its business operations. See, e.g., TAC ¶¶ 64-65, 212-216. Kate Spade also seeks to add new defendants Onward, as well as Tebele and Haddad, who, together, own and operate Onward and ACS, and control Vinci.[2] Id. ¶¶ 225-48, 262-99. Kate Spade seeks to add Tebele and Haddad to its existing trademark infringement, unfair competition, and false advertising claims asserted against ACS, because Tebele and Haddad personally directed ACS to seize and offer for sale Kate Spade-branded products without Kate Spade's consent. See id. ¶¶ 126-28, 225-48. Kate Spade also seeks to add new claims: Count 12 for trademark infringement in violation of the Lanham Act against Onward, Tebele,

---

[2] ACS is a secured creditor of Vinci. TAC ¶ 9. Kate Spade alleges that ACS and Onward took over control of Vinci in June 2023 when (1) ACS purchased a loan facility from Monroe Capital Management Advisors, LLC, under which it had lent approximately $174 million to Vinci; (2) Onward purchased most of Vinci's assets; and (3) Vinci delegated its functions as the Kate Spade licensee to Onward under the Onward Services Agreement. Id. ¶ 65.

and Haddad (id. ¶¶ 262-74); Count 13 for unfair competition and false advertising under the Lanham Act against Onward, Tebele, and Haddad (id. ¶¶ 275-81); Count 14 for trademark dilution under state law against Onward, Tebele, and Haddad (id. ¶¶ 282-87); Count 15 for unfair competition under state law against Onward, Tebele, and Haddad (id. ¶¶ 288-91); and Count 16 for tortious interference with contract against Onward (id. ¶¶ 292-99).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15 provides that leave to amend before trial should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). When a plaintiff seeks to add parties to a suit under Federal Rule of Civil Procedure 21, "the showing necessary [to amend the complaint] is the same as that required under Rule 15(a)." Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012). The standard under Rule 15(a), although liberal, allows motions for leave to amend to be denied where the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." See Foman v. Davis, 371 U.S. 178, 182 (1962); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (stating that "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"). "Mere delay," without a showing of bad faith or prejudice, is not itself sufficient to justify denial of a motion under Rule 15(a). Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) (Sotomayor, J.); Primetime 24 Joint Venture v. DirecTV, Inc., No. 99 Civ. 3307 (RMB) (MHD), 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000). "It is within the sound discretion of the court

4

whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

Under the scheduling order, Kate Spade's deadline to add new parties was June 25, 2024. See ECF No. 289. Under that same scheduling order, ACS was directed to amend its third-party complaint by June 21, 2024, resulting in a deadline of June 21, 2024 for the filing of amended pleadings. Id. Kate Spade filed the instant motion on June 18, 2024. See ECF No. 300. Because Kate Spade timely filed its motion for leave to amend, the motion does not implicate the good-cause standard in Rule 16 and is analyzed solely under Rule 15. See Fed. R. Civ. P. 16(b)(4); Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) ("Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied 'where the moving party failed to establish good cause.'") (quoting Parker, 204 F.3d at 340).

## DISCUSSION

Under Rule 15(a)'s liberal standard, "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). ACS and Vinci argue that Kate Spade's amendment will unduly prejudice Defendants, was made in bad faith, and was unduly delayed. Neither ACS nor Vinci argue that the new claims in the proposed Third Amended Complaint are futile. For the reasons discussed below, none of the factors warranting denial of leave to amend are present here.

A.  Undue Prejudice

ACS and Vinci oppose amendment, arguing that an amendment would be unduly prejudicial because it will require "rehashing of discovery" and will impose a personal burden on Tebele and Haddad, who will now need to retain separate counsel. See ECF No. 318 at 9-10; ECF No. 321 at 2-3. None of these reasons amount to undue prejudice.

To determine whether the proposed amendment will cause undue prejudice, courts "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Assoc., 988 F.2d 344, 350 (2d Cir. 1993)). Central to this determination is whether the new claims arise from the existing ones and whether a party had prior notice of a new claim. See Blagman v. Apple, Inc., No. 12 Civ. 5453 (ALC) (JCF), 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014). As the Second Circuit has explained, a court "will be most hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." Monahan, 214 F.3d at 284.

Even if Kate Spade's amended allegations and new claims required the parties to engage in additional discovery, Vinci's and ACS's "burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading," particularly where the parties are still in discovery, as they are here. A.V. by Versace, Inc. v. Gianni Versace S.P.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (quoting United States v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989)); Konig v. TransUnion, LLC, No. 18 Civ. 7299 (JCM), 2020 WL 550285, at *4 (S.D.N.Y. Feb. 4, 2020) (explaining that a need for new discovery does

not constitute undue prejudice on its own); <u>Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.</u>, 304 F.R.D. 170, 177 (S.D.N.Y. 2014) ("While we accept [non-movant]'s contention that [movant]'s amendment would necessitate additional discovery, . . . allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice.") (internal quotation marks and citation omitted). Discovery in this case is ongoing and Vinci itself sought leave to amend its own complaint on July 3, 2024, in the related action which is proceeding in parallel with this one. <u>See</u> <u>Vinci Brands LLC v. Coach Servs., Inc.</u>, No. 23 Civ. 5138 (LGS) (VF), ECF No. 413 (S.D.N.Y. July 3, 2024). Additionally, as recently as June 28, 2024, ACS filed an amended pleading in this action asserting new claims against Kate Spade and Case-Mate. ECF No. 314. As Kate Spade correctly argues, given all these changes, some additional discovery is inevitable, but that alone is not a basis for finding undue prejudice. <u>Konig</u>, 2020 WL 550285, at *4 ("Defendants' argument that the inclusion of [additional] claims would require additional discovery is . . . not sufficient to defeat the motion [to amend]").

There is no indication that the amendments proposed here by Kate Spade would require the type of significant additional expenditure of time or resources that would warrant denial of leave to amend on the grounds of undue prejudice. <u>See</u> <u>Primetime 24 Joint Venture</u>, 2000 WL 426396, at *5 ("The caselaw indicates that the additional expenditure of time or resources or the delay produced must indeed be significant to justify denying a party's request to amend its pleadings."). To the contrary, the new claims Kate Spade seeks to add stem from the same core factual allegations that have been known by Vinci since the filing of the first complaint. For example, Kate Spade seeks to add allegations that Vinci breached additional provisions of the license agreement that has been at the core of this case since its commencement. <u>See, e.g.</u>, TAC

¶¶ 4, 212-16. Further, Kate Spade seeks to add individual defendants to the same trademark infringement, unfair competition, and false advertising claims that are alleged in the operative complaint. Id. ¶¶ 235, 243. With regards to the entirely new claims Kate Spade wants to assert against Onward, Tebele, and Haddad, the claims all relate to the recently produced Onward Services Agreement, of which Onward, Tebele, and Haddad were plainly aware given that the agreement was exclusively within their possession. Id. ¶¶ 262-99.

In short, granting leave to amend should not cause significant delay or require significant additional discovery. See Ginsberg v. Gov. Props. Trust, Inc., No. 7 Civ. 365 (CSH) (ECF), 2008 WL 3833876, at *2 (S.D.N.Y. Aug. 13, 2008) (granting motion to amend complaint where new claims arose "out of the same agreement that [was] the subject of the underlying complaint[,] thereby minimizing the need for additional discovery"); see also JPMorgan Chase Bank, N.A. v. IDW Grp., No. 8 Civ. 9116 (PGG), 2009 WL 1357946, at *4-5 (S.D.N.Y. May 12, 2009) (allowing amendment to add claims and new defendant where new claims rested on the same allegations as the then-operative complaint); Lema v. Fitzcon Constr./Ren Corp., No. 20 Civ. 2311 (MKB), 2022 WL 1321596, at *4 (E.D.N.Y. May 3, 2022) (reasoning that where "new factual allegations" would have been known to defendant, "there is no risk of unfair surprise or undue prejudice"). And ACS's reliance (see ECF No. 318 at 10) on Tebele and Haddad having to retain separate counsel and incur litigation costs does not suffice to demonstrate undue prejudice. See A.V. by Versace, Inc., 87 F. Supp. at 299 ("Allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'").

B.  Bad Faith

Defendants argue that Kate Spade acted in bad faith, because it seeks to pierce the corporate veil by naming Haddad and Tebele as individual defendants, and is "inventing

grievances to retroactively justify its termination of Vinci" as a licensee. See ECF Nos. 318 at 10-13; ECF No. 321 at 2, 6; see also ECF No. 318 at 2 n.1. Courts in this Circuit have found bad faith where the moving party sought to add defendants without knowledge as to all defendants' potential liability, added allegations merely to evade the tolling of the statute of limitations, or acted with dilatory motive. See United States ex rel. Hayes v. Allstate Ins. Co., 686 F. App'x 23, 28 (2d Cir. 2017) (finding bad faith where counsel did not have knowledge as to all defendants' potential liability despite seeking to amend complaint to add 38 new defendants); Cohen v. Am. Airlines, Inc., 13 F. 4th 240, 247 (2d Cir. 2021) (affirming denial of leave to amend complaint that was dismissed as time-barred where the amendment added bad-faith allegations to circumvent the statute of limitations); Carroll v. Trump, 590 F. Supp. 3d 575, 587-89 (S.D.N.Y. 2022) (denying leave to amend pleadings where defendant demonstrated dilatory motive throughout litigation by evading service, "slow-roll[ing] his defenses," and "delay[ing] the progress of the lawsuit through frivolous motions practice"). None of those factors are present here.

Kate Spade sought to add Tebele and Haddad as defendants only two months after it learned of facts suggesting that they might be liable in their individual capacity. See ECF No. 301 at 1, 4-6. Although ACS contends that Kate Spade's amendment is a bad-faith attempt to pierce the corporate veil, and thus reach the assets of Tebele and Haddad, the cases on which ACS relies are distinguishable because they discuss piercing the corporate veil in the breach-of-contract context. See, e.g., eBC, Inc. v. Map Techs., LLC, No. 9 Civ. 10357 (CS), 2011 WL 12847702, at *4-7 (S.D.N.Y. May 17, 2011) (holding that LLC members could not be held personally liable for breach of contract where member signed the contract in representative capacity); Mike Bldg. & Cont., Inc. v. Just Homes, LLC, 27 Misc. 3d 833, 847-50 (Sup. Ct.,

Kings Cnty. 2010) (holding that plaintiff failed to establish the elements for piercing LLC's

corporate veil in order to hold individual members liable for breach-of-contract damages).

Kate Spade is not asserting breach-of-contract claims against Tebele or Haddad in their

individual capacity. Kate Spade asserts claims against Tebele and Haddad for trademark

infringement and unfair competition under the Lanham Act, and trademark dilution and unfair

competition under state law, based on allegations that Tebele and Haddad, as ACS's owners and

managers, personally directed ACS—which has no other employees—to seize, market, and offer

for sale Kate Spade-branded items without Kate Spade's knowledge or consent. TAC ¶¶ 126-28,

235-37, 262-91. "[I]t is well-established in the Second Circuit that" the Lanham Act provides for

individual liability where the "officer is a moving, active, conscious force behind the defendant

corporation's infringement." KatiRoll Co. v. Kati Junction, Inc., 33 F. Supp. 3d 359, 367

(S.D.N.Y. 2014); see also Pado, Inc. v. SG Trademark Hldg. Co., 537 F. Supp. 3d 414, 428

(E.D.N.Y. 2021) ("Allegations that suffice to plead individual liability under the Lanham Act

therefore also suffice to plead individual liability for trademark infringement and unfair

competition under New York law."). Although ACS contends that Kate Spade has acted in bad

faith because it is asserting these claims against Tebele and Haddad solely because Kate Spade

believes they "have the resources to pay a monetary award" (see ECF No. 318 at 10-11), there is

no evidence that Kate Spade is merely seeking to "bleed" the individual defendants (id. at 10).

And as Defendants implicitly concede given that neither has raised a futility argument, Kate

Spade has plausibly alleged Lanham Act claims against Tebele and Haddad. See TAC ¶¶ 225-248, 262-291.

    C.  Undue Delay

At the outset, "[d]elay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend." Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 97 (S.D.N.Y. 2010). As discussed, Defendants will not be unduly prejudiced by amendment, and Kate Spade has not acted in bad faith in seeking to file an amended complaint. See supra at 8-10. Defendants nevertheless contend that Kate Spade could have added its new factual allegations and claims thirteen months ago, when this case commenced. See ECF No. 318 at 7-9; ECF No. 321 at 4-5, 10. Contrary to Defendants' argument, Kate Spade did not unduly delay in seeking to amend the complaint.

The new claims Kate Spade seeks to add all stem from its discovery of the Onward Services Agreement. TAC ¶¶ 4, 9, 262-99. Pursuant to that agreement, Vinci transferred its obligations under the Kate Spade license agreement to Onward, and Onward subsequently manufactured, marketed, and sold Kate Spade-branded goods, without Kate Spade's knowledge or consent. Id. ¶¶ 130-44. That conduct supports Kate Spade's new trademark infringement, false advertising, and unfair competition claims under the Lanham Act, as well as its state trademark dilution and unfair competition claims. The Onward Services Agreement was only disclosed to Kate Spade in May 2024, and Kate Spade sought leave to amend on June 18, 2024. See Paradigm BioDevices, Inc. v. Centinel Spine, Inc., No. 11 Civ. 3489 (JMF), 2013 WL 1830416, at *4 (S.D.N.Y. May 1, 2013) (granting motion to amend under more stringent Rule 16 standard with respect to claims movant sought to add "one month after the final deposition upon which its [new] allegations rely"); Permatex, Inc. v. Loctite Corp., No. 3 Civ. 943 (LAK) (GWG), 2004

WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (granting leave to amend where motion was brought "less than two months" after learning new facts); Enzymotec Ltd. v. NBTY, Inc., 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (holding that movant's "argument that it discovered the facts underlying its new cause of action for breach of the supply agreement followed by filing a motion to amend within two months of acquiring the information is sufficient to show diligence").

It is of no moment that "[t]he identities of the principals of ACS and Onward have been known to Plaintiffs since before this litigation even began" (ECF No. 318 at 2), because evidence supporting Tebele's and Haddad's personal involvement and potential individual liability only recently came to light (ECF No. 301 at 1, 2, 4-6). Further, Kate Spade did not seek to amend its complaint on the eve of trial. See Duling, 265 F.R.D. at 97 (noting that courts "have found suspect" delays where moving party waits "until the eve of trial" to seek amendment). And, in any event, "most delays warranting denial of leave to amend are several years in length and are discussed in conjunction with prejudice or bad faith." Schvimmer v. Office of Court Admin., 857 F. App'x 668, 673 (2d Cir. 2021). There was no such delay here.

Turning to Vinci's argument, Vinci argues that Kate Spade "cannot in good faith contend that it did not know before now" of the additional allegations in the proposed Third Amended Complaint supporting its breach-of-contract claim in Count 7. ECF No. 321 at 4-7. But Vinci ignores that the new allegations underlying Count 7 all stem from Vinci's execution of the Onward Services Agreement—an agreement which was disclosed to Kate Spade in May 2024. See TAC ¶¶ 4, 63-65, 85, 129-30, 212-16. Kate Spade alleges that Vinci's execution of the Onward Services Agreement triggered the termination of Vinci's license agreement, giving rise to breach-of-contract claims under additional provisions of the license agreement. See id.

12

¶¶ 212-16. The discovery of the agreement presented new grounds to support Kate Spade's existing claim, and, in any case, courts have permitted amendments, even after the close of fact discovery, where a party is seeking to add additional facts to existing claims, as Kate Spade seeks to do here while discovery remains open. See, e.g., Miller v. Selsky, 234 F.3d 1262 (2d Cir. 2000) ("This circuit has permitted a party to amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint) (citation omitted).

In sum, Rule 15 provides that a court should freely grant leave to amend when justice so requires, and Defendants have not pointed to any facts suggesting undue delay, bad faith, or undue prejudice by Kate Spade. There thus is no basis to deny the motion for leave to amend.

## <u>CONCLUSION</u>

For the reasons stated herein, Kate Spade's motion for leave to file a Third Amended Complaint is **GRANTED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 300.

**SO ORDERED.**

DATED:       New York, New York
             October 9, 2024

 

_____
     VALERIE FIGUEREDO
     United States Magistrate Judge